IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

GENE HUTSON,                    )
                                )          8:08CV272
            Plaintiff,          )
                                )
      v.                        )
                                )      MEMORANDUM AND ORDER
COVIDIEN, INC.,                 )
                                )
            Defendant.          )
                                )

      This matter is before the court on defendant's motion for summary judgment, Filing

No. 35.   This is an action for employment discrimination and retaliation under the

Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA").[1]  Plaintiff also asserts

state law discrimination and retaliation claims under the Nebraska Fair Employment

Practice Act, Neb. Rev. Stat. §§ 480112 - 48-1126 ("NFEPA").[2]  The court has carefully

reviewed the record, the arguments of counsel, and the relevant case law.  The court

concludes that the motion for summary judgment should be granted in part and denied in

part.

**STANDARD OF REVIEW**

      On a motion for summary judgment, the question before the court is whether the

record, when viewed in the light most favorable to the nonmoving party, shows that there

is no genuine issue as to any material fact and that the moving party is entitled to judgment

as a matter of law.  Fed. R. Civ. P. 56(c); *Semple v. Federal Express Corp.*, 566 F.3d 788,

---

[1]The Americans with Disabilities Act incorporates the powers, remedies and procedures set forth in Title VII and the regulations promulgated thereunder.  42 U.S.C.A. § 12117.

[2]Disability discrimination claims under NFEPA are analyzed using the same framework as claims brought under the ADA.  *See Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002).

791 (8th Cir. 2009) (quoting *AgriStor Leasing v. Farrow*, 826 F.2d 732, 734 (8th Cir. 1987).

Where unresolved issues are primarily legal rather than factual, summary judgment is

particularly appropriate. *Id.* In ruling on a motion for summary judgment, a court must not

weigh evidence or make credibility determinations. *Kenney v. Swift Transp., Inc.*, 347 F.3d

1041, 1044 (8th Cir. 2003).

The burden of establishing that no genuine issue of material fact exists is on the

moving party. Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157

(1970). Therefore, if the moving party does not meet its initial burden with respect to an

issue, summary judgment must be denied notwithstanding the absence of opposing

affidavits or other evidence. *Adickes*, 398 U.S. at 159-60; *Cambee's Furniture, Inc. v.

Doughboy Recreational, Inc.*, 825 F.2d 167, 173 (8th Cir. 1987). However, "when a motion

for summary judgment is properly made and supported, an opposing party may not rely

merely on allegations or denials in its own pleading; rather, its response must—by

affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine

issue for trial." Fed. R. Civ. P. 56(e)(2). A genuine issue of material fact is more than

"some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v.

Zenith Radio Corp.*, 475 U.S. 575, 586 (1986). "Only disputes over facts that might affect

the outcome of the suit under the governing law will properly preclude the entry of

summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Although "summary judgment must be used with caution in discrimination cases due

to the fact-specific nature of each case, it nonetheless may be proper 'when a plaintiff fails

to establish a factual dispute on an essential element of [the] case.'" *Mershon v. St. Louis

Univ.*, 442 F.3d 1069, 1073-74 (2006) (*quoting Simpson v. Des Moines Water Works,* 425

2

F.3d 538, 542 (8th Cir.2005)); *see also Peterson v. Scott County,* 406 F.3d 515, 520 (8th Cir. 2005) (noting that "[s]ummary judgment should seldom be granted in employment discrimination cases because intent is often the central issue and claims are often based on inference").

**BACKGROUND**

The parties agree that the following facts are undisputed.  *See* Filing No. 36, Defendant's Memorandum in Support of Motion for Summary Judgment; Filing No. 43, Plaintiff's Brief in Resistance to Defendant's Motion for Summary Judgment; Filing No. 47, Defendant's Reply in Support of Motion for Summary Judgment.  Hutson began his employment at Covidien, formerly d/b/a Tyco-Kendall Health Care Corporation, on or about April 4, 2005.  He held the position of material handler/truck driver in the shipping and receiving department from the date of his hire through May 24, 2007.  As a material handler/truck driver, his duties included transporting materials within Covidien's Norfolk, Nebraska, facility.  However, his job description included the following language, "All employees are expected to perform tasks as assigned by [Covidien's] supervisory/management personnel, regardless of the job title or routine job duties." (Filing No. 36, Exhibit E.)

Hutson indicated on Covidien's employment application that he had been injured and broken his neck while working for a previous employer.  In May 2005, Hutson was assigned a box printing task.  Hutson informed his supervisor, Allan Murphy, that he was unable to perform the task due to his physical limitations.  The box printing task involved feeding flattened boxes through a machine that printed lot numbers and expiration dates on the boxes and required employees to grasp and stack the printed boxes.  Hutson and

3

Murphy met with Covidien's Human Resources Manager, Mike Sondgeroth, to discuss the issue.   At Sondgeroth's request, Hutson provided a copy of a functional capacity assessment prepared in 1999 for Dr. Phillips, Hutson's back doctor, by Carlotta Hartman OTR/L, an assessment specialist with the Grand Island Physical Therapy & Sports Clinic. (Filing No. 36, Exhibit M).  As a result, the box printing task was removed from Hutson's job duties.

Prior to May 23, 2007, the only other duty that Hutson informed management that he was unable to perform was that of "pumping plastic."  The task of pumping plastic involved transferring plastic from a railcar to Covidien's trucks and required employees to climb on top of the railcar and lift the top hatch to verify that the car was empty.  Covidien ultimately decided that the task would not be performed by any of the night crew, to which Hutson was assigned.  Hutson also received assistance from his co-workers with several tasks including stacking pallets, shoveling snow, and moving dock plates.[3]   Hutson sustained injuries on the job as well, breaking his hand and twice injuring his back.  The back injuries did not result in any medical restrictions.  However, when Hutson broke his hand on October 16, 2006, while opening the trailer doors on the back of a truck, he was placed on medical restrictions until December 14, 2006.  Covidien accommodated those restrictions.

On May 23, 2007, Hutson received a note from his supervisor, Jennifer Bernhardt, who had assumed Murphy's duties as Hutson's supervisor.[4]  Hutson was instructed to

---

[3]It is unclear whether Hutson's supervisors Murphy or Bernhardt or Yates (those that made the decision to terminate his employment) were aware of the assistance being given by the co-workers.

[4]Murphy remained employed at Covidien, but did not act as Hutson's direct supervisor.

4

report to the maintenance department at the beginning of his shift due to a lack of work in the shipping department.  Hutson sought out Bernhardt at the beginning of his shift and was told that his duties would include paper shredding.  The parties dispute the content of that conversation.  Hutson alleges that he asked Bernhardt if the shredding task violated his work restrictions and that he was unsure if it did.  Hutson told Bernhardt that he would rather go home, lose a day's pay, and risk receiving a written warning than take a chance of hurting himself by performing the paper shredding task.  (Filing No. 44, Exhibit 1, Hutson deposition 163:3-5,18-20).  According to Hutson, Bernhardt told him that it was his choice whether he leave and risk receiving a written warning.  (*Id*. at 163:23-24.)  Bernhardt describes the incident differently.  According to Bernhardt, Hutson indicated that he was unwilling and unable to do the paper shredding duties because it was below him.  (Filing No. 36, Exhibit D, Bernhardt deposition 50:5-7.)  However, she admitted that Hutson also indicated that his neck was bothering him and that the paper shredding task would "push [him] over the edge."  (*Id*. at 70:15-16.)  Bernhardt testified that she explained that the task was 'light duty work: and that she practically begged him to reconsider his refusal.  (*Id*. at 49:20; 50:8-10.)  The parties agree that Hutson went home after that conversation and did not work his assigned shift.

On May 24, 2007, Hutson was called into a meeting with Bernhardt, Suzanne Yates, the new Human Resources manager, and Tony Weber, the Plant Manager.  Bernhardt and Yates informed Hutson that he was being terminated for insubordination.  His position at Covidien was not filled after his termination.

Hutson filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and the NEOC on July 26, 2007, alleging discrimination on the

basis of disability and retaliation.  The EEOC issued a "right to sue" letter on June 17, 2008, after the NEOC dismissed his charge.  (Filing No. 1, Ex. A.)  Hutson filed suit against Covidien on June 30, 2008.  (Filing No. 1.)

In his complaint, Hutson alleges that his former employer, Covidien, Inc. (hereinafter, "Covidien"), terminated his employment because of a disability, or a perceived disability in violation of the ADA and the NFEPA.[5]  He also asserts that Covidien retaliated against him by terminating his employment after he requested an accommodation.

In its motion for summary judgment, Covidien argues that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.  It contends that (1) Hutson is not disabled; (2) Bernhardt and Yates had no knowledge of Hutson's alleged disability; (3) Hutson did not request an accommodation; and (4) Hutson failed to present evidence of a discriminatory motive by Bernhardt or Yates.  (Filing No. 35.)

## DISCUSSION

**Discrimination Claims under the ADA**

To make a *prima facie* case of employment discrimination under the ADA, the plaintiff must establish "that (1) he is disabled within the meaning of the ADA, (2) he is qualified to perform the essential functions of his job with or without reasonable accommodation; and (3) he suffered an adverse employment action under circumstances that give rise to an inference of unlawful discrimination based on disability." *Dropinski v. Douglas County, Neb.,* 298 F. 3d 704, 706-07 (8th Cir. 2002).

---

[5]The NFEPA prohibits an employer from discharging an individual "because of such individual's race, color, religion, sex, disability, marital status, or national origin."  Neb. Rev. Stat. § 48-1104(1).  Disability discrimination claims under NFEPA are analyzed using the same framework as claims brought under the ADA.  *See Orr v. Wal-Mart Stores, Inc.,* 297 F.3d 720, 723 (8th Cir. 2002).  The fate of Hutson's NFEPA claims lie with that of his ADA claims.

Disabled Person under the ADA

The existence of a disability is to be determined on a case-by-case basis. *Toyota Motor Mfg., Kentucky, Inc. v. Williams,* 534 U.S. 184, 197 (2002).[6]  To establish that he is disabled under the ADA, an individual must show that he:  (1) has a physical or mental impairment that substantially limits one or more of his major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment.  42 U.S.C. § 12102(2)(A)-(C).

When inquiring whether a disability substantially limits a major life activity, the court "must examine the extent of the limitation caused by [the] impairment in terms of [the plaintiff's] own experience." *Albert v. Smith's Food & Drug Ctrs, Inc.,* 356 F.3d 1242, 1250 (10th Cir. 2004).  The term "substantially limits" means:  (1) unable to perform a major life activity that the average person in the general population can perform; or (2) significantly restricted as to the condition, manner, or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.  29 C.F.R. § 1630.2(j)(i)&(ii); *Albert,* 356 F.3d at 1250.  Major life activities are "activities that are of central importance to daily life." *Williams,* 534 U.S. at 197.  They include caring for oneself, performing manual tasks, walking, seeing, hearing, breathing, learning, and working. *Nuzum v. Ozark Automotive Distribs., Inc.,* 432 F.3d 839, 843 (8th

---

[6]*Williams's* narrow construction of a substantial limitation "in performing a major life activity" was expressly abrogated by amendments to the ADA which took effect on January 1, 2009. ADA Amendments Act of 2008 ("ADAAA"), Pub.L. No. 110-325, § 2(b), 122 Stat. 3553, 3554.  Neither party argues for the application of the ADAAA to this case, and because plaintiff's claims are based on the defendant's past conduct, the court finds it unnecessary to determine whether retroactive application of the ADAAA is warranted, and the further finds that reliance on the Supreme Court's decision in *Williams* is appropriate.

Cir. 2005). "The terms 'major life activities' and 'substantial limitation' must be 'interpreted strictly to create a demanding standard for qualifying as disabled.'" *Gretillat v. Care Initiatives,* 481 F.3d 649, 652 (8th Cir. 2007) (*quoting Williams,* 534 U.S. at 197).

Hutson alleges that his "injuries and surgeries over the years have substantially limited his ability to lift, walk, stand, sit, grasp, and to perform manual tasks such as shaving, writing and eating."[7]   (Filing No. 43, p. 12.).   However, nothing presented by Hutson concerning his alleged limitations suggests that he was *substantially limited* in those major life activities.   In fact, Hutson admits that he experiences difficulties with respect to some of these major life activities, such as eating, rarely or occasionally.  (Filing No. 44, Exhibit 1, Hutson deposition 24:13-22).  His testimony further indicates that he is able to perform many of the activities, albeit more slowly or with some limitations.  (*Id.* at 15:13-16 (grasping); 19:8-9, 22:8-20 (lifting); 23:16-24:6 (sitting); and 25:20-24 (shaving).

The record also demonstrates that, in spite of his broken neck and any other physical restrictions or limitations documented in his 1999 functional capacity assessment, Hutson was able to obtain employment with Covidien and was able to maintain that employment until his termination on May 24, 2007.  He testified that he was able to perform all of the duties of the job listed on Covidien's job description for material handler/truck driver.  (*Id.* 128:2-20; Filing No. 36, Exhibit E.)

Finally, "[a] court should consider the nature, severity, duration, and long-term impact of the impairment when deciding whether that impairment substantially limits a

---

[7]Hutson testified that he endured the following medical procedures prior to his employment with Covidien: carpal tunnel syndrome surgery in 1988; left shoulder decompression surgery in 1992 or 1993; knee surgery in 1995; and anterior discectomy with cervical fusion (neck surgery) in 1998. (Filing No. 36, Hutson deposition 11:4-24, Exhibit J.)

major life activity." *Gretillat,* 481 F.3d at 652. Hutson has provided no evidence to suggest that any limitation recognized in the 1999 functional assessment was permanent or long-term. For the reasons discussed above, the record does not support Hutson's contention that he has a physical or mental impairment that substantially limits one or more of his major life activities.

In addition to his actual disability claim, or in the alternative, Hutson contends that Covidien regarded him as disabled and terminated his employment based on that perceived disability.[8] In support of his claim, Hutson notes the following: (1) Covidien was aware of Hutson's broken neck injury at the time he was hired; (2) Covidien received a copy of a physical assessment that listed work restrictions; (3) Hutson spoke with his supervisors and co-workers about his limitations; and (4) Covidien accommodated Hutson's physical limitations. (Filing No. 43, p. 13.)

"To be regarded as disabled under the ADA, [plaintiff] would have to show that [the defendant] mistakenly believed that [plaintiff] had a physical impairment that substantially limited one or more major life activities, or [the defendant] mistakenly believed that [plaintiff] had an actual, nonlimiting impairment which substantially limited one or more major life activities." *Brunko v. Mercy Hosp.,* 260 F.3d 939, 942 (8th Cir. 2001) (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 489 (1999), abrogated by ADA Amendments

---

[8]In his brief (Filing No. 43), Hutson appears to argue that Covidien regarded him as disabled based in part on his contention that it had a record of his disabilities. Hutson contends that the physical capacity assessment completed in 1999 and a letter that he wrote to Mike Sondgeroth constitute a record of his disabilities. (Filing No. 43, p. 14.) The court will not construe Hutson's discussion of a "record of disability" as a separate basis for a finding of disability under the ADA as it was not presented by Hutson in his complaint (Filing No. 1). Moreover, any such claim by Hutson would fail. "In order to have a record of disability under the ADA, a plaintiff's medical documentation must show that he has a history of, or has been misclassified as having, a physical or mental impairment that substantially limits one or more major life activities." *Weber v. Strippit, Inc.,* 186 F.3d 907, 915 (8th Cir. 1999).

Act of 2008.[9]   Covidien's admitted awareness of Hutson's neck injury and his physical limitations and/or recommended restrictions documented in his 1999 functional assessment does not provide sufficient evidence that   Covidien regarded him as substantially limited in one or more major life activities.   The functional assessment does not include any projections with respect to the permanency or likely duration of Hutson's physical limitations.   Moreover, it did not include any finding that he was "substantially limited in major life activities."   *See* *Costello v. Mitchell Public School Dist. 79, 266 F.3d 916, 924 (8th Cir. 2001)* (records did not show a substantially limiting impairment, so no genuine issue of fact and summary judgment properly granted).

"A lifting restriction, without more, is not a disability." *Wenzel v. Missouri-American Water Co., 404 F.3d 1038, 1041 (8th Cir. 2005).* "'It logically follows then that being regarded as having a limiting but not disabling restriction also cannot be a disability within the meaning of the ADA." *Id.* (quoting *Conant v. City of Hibbing, 271 F.3d 782, 785 (8th Cir. 2001).* Hutson has presented no evidence to indicate that Covidien was in receipt of, or aware of, any medical records or any other documentation that would indicate that he had an impairment that substantially limited a major life function.   Nor is there sufficient evidence to support his allegation that the individuals responsible for his termination viewed him as disabled.   In fact, statements made by Bernhardt and Yates support Covidien's position that it did not consider Hutson to be disabled or unable to perform the duties of his job.   (Filing No. 36, Exhibit D, Bernhardt deposition 72:16-21; Filing No. 36, Exhibit S, Yates declaration.)

---

[9]*See supra* note 6.

Furthermore, the job accommodation that Covidien provided with respect to the box printing task does not provide sufficient evidence to support Hutson's claim that Covidien regarded him as disabled. "The provision of accommodations alone . . . does not establish that an employer regarded an employee as disabled." *Nyrop v. Independent School District No. 11,* 2009 WL 961372, *5 (D. Minn.) (quoting *Williams v. Phila. Hous. Auth. Police Dep't,* 380 F.3d 751, 776 n. 20 (3d Cir. 2004) (additional internal citations omitted)).

Accordingly, the court concludes that there is no evidence in this record that would support a finding of disability under the ADA. As such, the court finds that Covidien is entitled to judgment as a matter of law on Hutson's discrimination claim under the ADA and NFEPA.[10] Because Hutson is unable to establish an essential element of his prima facie case, the court finds discussion of the remaining two elements unnecessary.

**Retaliation Claims under the ADA**

The ADA also provides that "no person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

Although the court found that, as a matter of law, Hutson failed to establish that he was disabled and was therefore precluded from proceeding on his discrimination claims, "the absence of a disability does not translate into an absence of protection under the ADA." *Shellenberger v. Summit Bancorp, Inc.,* 318 F.3d 183, 190 (3d Cir. 2003). "The right to request an accommodation in good faith is no less a guarantee under the ADA than

---

[10]Because Hutson is unable to establish an essential element of his prima facie case, the court finds discussion of the remaining two elements unnecessary.

the right to file a complaint with the EEOC, and we have already explained that the ADA protects one who engages in the latter activity without regard to whether the complainant is 'disabled.'" *Id.* at 191. "An individual who is adjudged not to be a qualified individual with a disability may still pursue a retaliation claim under the ADA . . . as long as [he] had a good faith belief that the requested accommodation was appropriate." *Heisler v. Metropolitan Council,* 339 F.3d 622, 632 (8th Cir. 2003) (quoting *Mondzelewski v. Pathmark Stores, Inc.,* 162 F.3d 778, 786 (3d Cir. 2003)) (internal quotations omitted).

"To establish a prima facie case of retaliation, a plaintiff must show that she engaged in statutorily protected activity, suffered an adverse employment action, and that there was a causal connection between the adverse employment action and the protected activity." *Peterson,* 406 F.3d at 524 (citing *Smith v. Riceland Foods, Inc.,* 151 F.3d 813, 818 (8th Cir. 1998); *Stevens v. St. Louis Univ. Med. Ctr.,* 97 F.3d 268, 270–71 (8th Cir. 1996)). "A defendant must present evidence of a legitimate, non-retaliatory reason for its action to rebut the plaintiff's prima facie case. The plaintiff must then show that the defendant's proffered reason was a pretext for retaliation." *Id.*

Hutson's request for an accommodation[11] is a protected activity, and the defendant's decision to terminate his employment is an adverse employment action. The close temporal connection between Hutson's accommodation request and his termination the

---

[11]Hutson contends that he "engaged in a protected activity when he requested an accommodation, or at the very least, an explanation as to whether or not the paper shredding duties violated his work restrictions." (Filing No 43, p. 20). Covidien argues that Hutson did not request an accommodation during his April 23, 2007, interaction with Bernhardt which led to his termination the following day. Covidien further argues that "[e]ven assuming Mr. Hutson believed he was making a request for accommodation under the ADA, Ms. Bernhardt had no reason to know he was requesting an accommodation." (Filing No. 47, p. 24). Resolution of those issues require an assessment of credibility and are matters for the finder of fact. Moreover, Covidien does not argue that Hutson's request for accommodation was based on anything other than good faith.

12

following day demonstrates that genuine issues of material fact remain regarding whether Covidien's proffered reason for firing him, i.e., insubordination, was pretextual. *See Arraleh v. County of Ramsey*, 461 F.3d 967, 977 (8th Cir. 2006) ("An inference of a causal connection between a charge of discrimination and [an adverse employment action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation.") (alteration in original); *Peterson,* 406 F.3d at 525 (A termination two weeks after a claim of discrimination is "close enough to establish causation in a prima facie case."). Construing the facts in a light most favorable to the plaintiff, as the court must at this stage of the proceedings, Hutson has presented a prima facie case of retaliation based on disability under the ADA and NFEPA. He has presented evidence from which a reasonable jury could conclude that he was terminated in retaliation for requesting an accommodation with respect to the paper shredding assignment on April 23, 2007. Therefore, Covidien's motion for summary judgment on Hutson's retaliation claims will be denied. Accordingly,

IT IS ORDERED:

1.  Defendant's motion for summary judgment (Filing No. 35) is granted in part and denied in part.

2.  Defendant's motion for summary judgment is granted with respect to plaintiff's claims of disability discrimination under the ADA and NFEPA (First and Third Causes of Action).

3.  Defendant's motion for summary judgment is denied with respect to plaintiff's claims of retaliation under the ADA and NFEPA (Second and Fourth Causes of Action), and constructive discharge (Fourth Cause of Action).

DATED this 26th day of August, 2009.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.